**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Case No. 10-cv-00385-WJM-BNB

SBM SITE SERVICES, LLC, an Oregon limited liability company,

      Plaintiff,

v.

JOHN GARRETT, and
CROWN BUILDING MAINTENANCE, INC. d/b/a Able Building Maintenance d/b/a Able
Services d/b/a Able Acquisition Corp.,

      Defendants.

---

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

---

Plaintiff SBM Site Services ("Plaintiff" or "SBM") brings claims against John Garrett ("Garrett") and Crown Building Maintenance Inc. d/b/a Able Building Maintenance ("Able") for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and brings as well various common law and Colorado statutory claims against these Defendants.  (Am. Compl. (ECF No. 190).)  Before the Court are Garrett's Partial Motion to Dismiss (ECF No. 196) and Able's Motion to Dismiss (ECF No. 217) (together the "Motions").  For the reasons set forth below, the Motions are denied.

### I.  LEGAL STANDARD

Both Garrett and Able bring their Motions to Dismiss at least in part under Federal Rule of Civil Procedure 12(b)(6).  The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead

sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The concept of "plausibility" at the dismissal stage refers not to whether the allegations are likely to be true; the court must assume them to be true. *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192-93 (10th Cir. 2009). The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Overall, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

Able also brings its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has subject-matter jurisdiction to properly hear the case before it. Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), as is asserted in this case, the Court also accepts

the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002

(10th Cir. 1995).

## II.  FACTUAL BACKGROUND

The operative complaint in this case is Plaintiff's First Amended Complaint, filed

January 24, 2011.  (ECF No. 190.)  The relevant facts, as pled in the First Amended

Complaint and accepted as true for purposes of the instant Motions, are as follows.

Plaintiff SBM provides various facilities support services such as janitorial,

recycling, and moving services to its customers.  (Am. Compl. ¶ 12.)  SBM maintains a

"great deal" of confidential information in an electronic database known as its

"Knowledge Portal".  (*Id.* ¶ 14.)  The Knowledge Portal contains all of the forms and

procedures necessary to operate SBM's business.  (*Id.*)  It also contains confidential

customer lists and confidential information pertaining to particular customers.  (*Id.*)

For nearly fifteen years, Defendant John Garrett was employed by SBM.  (*Id* ¶

13.)  At the time of his departure from SBM, Garrett was the Senior Vice President –

Chief Business Development Officer and one of only five employees that reported

directly to SBM's Chief Operating Officer.  (*Id.*)  SBM provided Garrett with access to

the Knowledge Portal for purposes of performing the functions of his job.  (*Id.* ¶ 14.)

Garrett primarily worked remotely for SBM from a home office in Windsor,

Colorado.  (*Id.* ¶ 16.)  Because he worked remotely, SBM provided Garrett with two

desktop computers and two laptop computers.  (*Id.*)  Garrett used these SBM-provided

devices to remotely access SBM's computer system, including the Knowledge Portal.

(*Id.*)  SBM also provided Garrett with an external drive to maintain an archive of bids,

proposals, templates, and other marketing tools.  (*Id*.)

SBM's Employee Handbook provides: "No one is permitted to remove or make copies of any SBM records, reports or documents without prior management approval." (*Id*. ¶ 18.)  Additionally, on February 27, 1997, Garrett executed a Confidentiality Agreement in which he agreed, in relevant part, "to hold in confidence and not disclose any Company business, including but not limited to: accounting records, employee records, customer lists and contracts, specialized training information, processes and operations . . ."  (*Id*. 19.)  On March 27, 2006, Garrett also executed a Non-Competition, Non-Solicitation and Confidentiality Employment Agreement ("Non-Compete") in which he agreed not to "engage or participate, directly or indirectly, in any business or activity which directly or indirectly competes with or is similar to the business" of SBM for three years after termination of his employment.  (*Id*. ¶ 20.)

Defendant Able is a direct competitor of SBM.  (*Id*. ¶ 24.)  In December 2009, Garrett had multiple conversations with high-ranking officers at Able.  (*Id*. ¶¶ 26, 28.) Shortly after one of these meetings, Garrett asked Christine Kieft, his administrative assistant, to access the Knowledge Portal and download all available files under each category.  (*Id*. ¶ 26.)  Garrett later asked Kieft to mail him a CD with all of these documents on it.  (*Id*. ¶ 29.)

On January 3, 2010, Garrett met with representatives from Able to discuss expanding Able's business services.  (*Id*. ¶ 30.)  In follow-up correspondence to that meeting, Able informed Garrett that he would be heading up a new division—Able Building Maintenance.  (*Id*.)  The following day, Garrett informally informed SBM that he

was resigning effective January 22, 2010.  (*Id*. ¶ 31.)  SBM informed Garrett that, upon his departure from employment, he would be required to return all SBM property, including equipment, records, and confidential and/or trade secret information in any form or medium.  (*Id*. ¶ 35.)  Garrett confirmed that he would return the property.  (*Id*.)

On January 11, 2010, Able made a written offer of employment to Garrett.  (*Id*. ¶ 32.)  Garrett then directed Kieft to contact members of the sales team and have them provide their most current customer contact information sheet.  (*Id*.)  Upon receipt of this information, Garrett e-mailed it to his personal e-mail account.  (*Id*. ¶ 33.)  Between January 10, 2010 and January 22, 2010, Garrett sent leads and other confidential information of SBM to executives at Able.  (*Id*. ¶ 34.)

Garrett met with SBM's  director of human resources on January 26, 2010 but failed to return any of his company computers or the disk with information downloaded from the Knowledge Portal that was created by Kieft.  (*Id*. ¶ 38.)  SBM scheduled a follow-up meeting for January 29, 2010 to collect these items but Garrett cancelled and informed SBM that all equipment had been shipped.  (*Id*.)

Garrett began his employment with Able on January 28, 2010.  (*Id*. ¶ 41.)  SBM alleges that Garrett and Able have used and are actively using its confidential trade secret information, including customer lists, historical bid information, and preferred supplier agreements, to lure customers away from SBM.  (*Id*. ¶¶ 42-43.)  Garrett also loaded SBM's confidential trade secret information onto a laptop provided to him by Able.  (*Id*. ¶ 44.)

SBM did not receive Garrett's laptop until February 16, 2010.  (*Id*. ¶ 39.)  When

SBM received the laptop, it had been encrypted with a drive-lock to prevent access. (*Id*.)  To date, Garrett has not provided SBM with the password to access the laptop. (*Id*.)  SBM has since learned that the laptop was "intentionally erased".  (*Id*.)

Based on these factual allegations, SBM brings the following claims: (1) Breach of Confidentiality Agreement against Garrett; (2) Breach of Contract—Non-Compete Agreement against Garrett; (3) Breach of Implied Duty of Good Faith and Fair Dealing against Garrett; (4) Inevitable Disclosure against Garrett and Able; (5) Misappropriation of Trade Secrets in violation of Colo. Rev. Stat. § 7-74-101 *et seq*. against Garrett and Able; (6) Civil Theft against Garrett and Able; (7) Breach of Fiduciary Duty against Garrett; (8) Conversion against Garrett; and (9) violation of the CFAA against Garrett and Able.  (Am. Compl. pp. 16-26.)

### III.  ANALYSIS

Defendant Garrett's Motion seeks dismissal of Plaintiff's CFAA claim and argues that the Amended Complaint fails to state a claim upon which relief could be granted. (ECF No. 196.)  Defendant Able's Motion raises this same argument and also alleges that: (1) once the CFAA claim is dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims; (2) the Court should decline to exercise jurisdiction over this action under the *Colorado River* doctrine; and (3) Plaintiff's Amended Complaint fails to state a claim with respect to three of the state law claims.  (ECF No. 217.)  The Court will address each of these issues in turn below.

### A.    CFAA Claim

Both Garrett and Able allege that Plaintiff's Amended Complaint fails to state a

-6-

claim for violation of the CFAA.  The CFAA provides, in pertinent part, that it shall be unlawful for anyone to "intentionally access[] a protected computer without authorization and as a result of such conduct, cause[] damage and loss."  18 U.S.C. § 1030(a)(5)(C). Therefore, to state a claim under this subsection, Plaintiff must allege that Defendants: (1) intentionally accessed a protected computer; (2) without authorization; and (3) caused damage or loss.  *Id*.  Defendants dispute the second prong of this claim and argue that, because Garrett was authorized to access the laptop while he was employed by Plaintiff, he cannot have accessed the laptop without authorization.  (ECF No. 217 at 6.)

The Tenth Circuit has yet to address what constitutes "unauthorized access" for purposes of the CFAA and there is a split in the circuits.  In *International Airport Centers, LLC v. Citrin*, 440 F.3d 418 (7th Cir. 2006), the defendant was employed by the plaintiff and had a company-issued laptop.  Defendant decided to quit his employment and go into business for himself.  Before he returned his employer-provided laptop, he installed a "secure-erasure program" that deleted all of the data on the laptop and made it unrecoverable.  The Seventh Circuit held that the loading of the secure-erasure program onto the laptop constituted unauthorized "damage" or to the laptop and violated the CFAA.  *Id*. at 419.  Using agency principles, the court rejected defendant's contention that his access was not unauthorized because he was an employee:

> [Defendant's] authorization to access the laptop terminated when, having already engaged in misconduct and decided to quit IAC in violation of his employment contract, he resolved to destroy files that incriminated himself and other files that were also the property of his employer, in violation of the

duty of loyalty that agency law imposes on an employee.

. . .

"Violating the duty of loyalty, or failing to disclose adverse interests, voids the agency relationship." *State v. DiGiulio*, 172 Ariz. 156, 835 P.2d 488, 492 (App. 1992). "Unless otherwise agreed, the authority of the agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal." *Id.*

*Id.* at 420 (internal citations omitted). Therefore, under the Seventh Circuit's approach, whether access to a computer was "unauthorized" depends on the status of the agency relationship between the employer and employee.

Other circuits have taken a more narrow view on what constitutes "unauthorized access" for purposes of the CFAA. In *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009), the Ninth Circuit held:

The plain language of the statute therefore indicates that "authorization" depends on actions taken by the employer. Nothing in the CFAA suggests that a defendant's liability for accessing a computer without authorization turns on whether the defendant breached a state law duty of loyalty to an employer. If the employer has not rescinded the defendant's right to use the computer, the defendant would have no reason to know that making personal use of the company computer in breach of a state law fiduciary duty to an employer would constitute a criminal violation of the CFAA.

*Id.* at 1135. Thus, the Ninth Circuit's approach focuses on whether the employer has specifically rescinded the employee's access to the computer in determining whether such access was "unauthorized."

As previously stated, the Tenth Circuit has not yet taken a position on this issue. However, the split in circuits is immaterial to this case because under either standard

-8-

Plaintiff's Amended Complaint states a claim.  SBM informed Garrett that he was required to return all property that he had been given, including his equipment, at the time he ended his employment.  (Am. Compl. ¶ 37.)  Thus, SBM explicitly revoked Garrett's access to the laptop as of his last day as an employee.  Garrett failed to return much of his equipment, including a laptop, on his last day and canceled a follow-up meeting SBM had scheduled to collect this equipment.  (*Id*. ¶ 38.)  Garrett retained the laptop for approximately three weeks after he terminated his employment with Plaintiff.  (*Id*. ¶ 39.)  When he returned the laptop to Plaintiff, it had been "intentionally erased."  (*Id*.)  The Court finds that it is reasonable to infer that Garrett accessed the laptop after his last day of employment with SBM or, stated differently, it is unreasonable to infer that Garrett retained the SBM laptop for about three weeks after his employment with SBM had terminated only to refrain from accessing said laptop during this prolonged period of time.  As a consequence, the Court holds that SBM has stated a claim for violation of the CFAA.

The cases cited by Defendants for the proposition that Garrett's access to the laptop was not "unauthorized" are easily distinguishable because they involve the use (or alleged misuse) of company-provided equipment during the duration of the defendant's employment.  *See, e.g., Shamrock Foods Co. v. Gast*, 535 F.Supp.2d 962, 967 (D. Ariz. 2008) (employee did not violate CFAA by emailing himself information during his employment that he was authorized to access); *Diamond Power Intern., Inc. v. Davidson*, 540 F.Supp.2d 1322, 1343 (N.D. Ga. 2007) (employee that downloaded confidential data onto a zip drive during his employment did not violate CFAA).  In this

case, Garrett retained Plaintiff's laptop for three weeks *after his employment ended*, including more than two weeks after he started his employment with Able, a direct competitor with SBM.  (Am. Compl. ¶¶ 37-41.)

There can be no question that, under either the Seventh or the Ninth Circuit's interpretation of "unauthorized access", Garrett's access to the laptop became unauthorized when his employment ended and SBM requested return of the laptop. Therefore, the Court finds that the Amended Complaint states a claim for violation of the CFAA against Garrett.

The Court also finds that the Amended Complaint states a claim for a CFAA violation against Able.  Garrett began his employment with Able on January 28, 2010. (Am. Compl. ¶ 41.)  At such time, Garrett became an agent of Able and Able became liable for any actions taken within the scope of his employment.  *See Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1336 (D. Colo. 1997).  Garrett did not return the laptop computer to Plaintiff until more than two after he began his employment with Able.  (Am. Compl. ¶ 39.)  It is reasonable to infer that Garrett accessed SBM's laptop during the time that he was employed with Able and in the scope of such employment.  Plaintiff's Amended Complaint therefore states a claim for violation of the CFAA against Able.  *See Shurgard Storage Ctrs, Inc. v. Safeguard Self Storage*, 119 F.Supp.2d 1121, 1125 (W.D. Wash. 2000) (holding that complaint by former employer stated a claim for violation of CFAA against new employer under agency theory); *Charles Schwab & Co., Inc. v. Carter*, 2005 WL 2369815, *7 (N.D. Ill. Sept. 27, 2005) (new employer liable for violation of CFAA where new employer

affirmatively urged employee to access former employer's computer system).

Accordingly, Defendants' Motions are denied to the extent they seek dismissal of Plaintiff's CFAA claim against both Defendants.

## B.   Supplemental Jurisdiction

Defendant Able argues that, if Plaintiff's CFAA claim is dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  However, because the Court finds that Plaintiff has stated a claim for violation of the CFAA, the Court finds no just cause to decline supplemental jurisdiction over the state law claims.  Accordingly, Able's Motion to Dismiss is denied to the extent it asks the Court to decline supplemental jurisdiction over Plaintiff's state law claims.

## C.   *Colorado River* Doctrine

Able also argues that the Court should decline to exercise jurisdiction over this case pursuant to the *Colorado River* doctrine because there is parallel litigation ongoing in the California state courts ("California Action").  (ECF No. 217 at 10-11.)

The *Colorado River* doctrine governs whether a district court should stay or dismiss a federal suit pending the resolution of a parallel state court proceeding.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976).  The Supreme Court has held that federal courts may not use any of the abstention doctrines to refuse to exercise jurisdiction over a suit for non-equitable relief that duplicates an ongoing state litigation.  *See Colorado River*, 424 U.S. at 813, 816-818.  However, the Supreme Court also concluded that judicial economy concerns may

justify deferral of a federal suit when pending state litigation will resolve the issues presented in the federal case.  *See id.* at 817–20.  Under the abstention doctrines, the Court is required to abstain in many circumstances; however, whether to decline to exercise jurisdiction pursuant to *Colorado River* is discretionary.  *Rienhardt v. Kelly*, 164 F.3d 1296, 1303 (10th Cir. 1999).

The Tenth Circuit has warned that the appropriate circumstances for deferral under the *Colorado River* doctrine are "considerably more limited than the circumstances appropriate for abstention" and must be "exceptional."  *Id.* (quoting *Colorado River*, 424 U.S. at 817-18).  Accordingly, the Court's "task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction . . .; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the surrender of the jurisdiction."  *Id.* (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983)).  Simply stated, "[d]espite the temptation for federal courts to use the doctrine as a means of stemming the rising tide of litigation, suits in federal court are not easily swept away by *Colorado River*."  *Id.*

The first step under the *Colorado River* analysis is determining "whether the state and federal proceedings are parallel." *Allen v. Board of Educ., Unified Sch. Dist.*, 436, 68 F.3d 401, 403 (10th Cir. 1995).  Suits are parallel if "substantially the same parties litigate substantially the same issues in different forums."  *Id.*  The court examines "the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings, resolving any doubt in favor of exercising federal

jurisdiction." *Id.* If the cases are not parallel, the federal court must exercise jurisdiction. *Allen*, 68 F.3d at 403. If the cases are parallel, the federal court must consider a multitude of other factors in deciding whether to surrender jurisdiction until the conclusion of state court proceedings. *Id.*

The nature of the parties and the claims raised int his case is set forth above. The California Action was filed by Able against SBM in San Francisco Superior Court seeking a declaratory judgment on the following issues: (1) the enforceability Noncompetition Agreement between Garrett and SBM; (2) to which of SBM's protectable trade secrets Able allegedly has access; (3) whether Able misappropriated any of SBM's trade secrets; (4) whether SBM violated California Business and Professions Code § 17200 *et seq.*; and (5) whether SBM violated California Penal Code § 502. (ECF No. 217-5.) SBM cross-claimed against Able and three of its executives alleging that they violated California's Uniform Trade Secret Act and California Business and Professions Code § 17200. (ECF No. 217-4.)

Able claims that this case is parallel to the California Action because they involve substantially the same issues and parties. The Court disagrees. There are at least three additional defendants named in the California Action who are not parties to this case. Perhaps more significantly, it is unclear whether Garrett is a party to the California Action.[1] Additionally, there are material differences in the claims pled in the

---

[1] The copies of the pleadings from the California Action filed with the Court do not indicate that Mr. Garrett is a party to that action. (ECF Nos. 217-4 & 217-5.) However, Able has filed a transcript from a recent hearing in the California Action during which counsel stated that Garrett was now a party to that action. (ECF No. 556-2 at 9.) The Court takes judicial notice of this transcript. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (federal courts may take notice of related proceedings in other

two actions.  The instant action brings two Colorado statutory claims and the CFAA

claim, none of which are part of the California Action.  This case also involves six

common law claims as to which the Court has not had the occasion to determine

whether California or Colorado law applies.[2]  The California Action is a declaratory

judgment action which involves at least two California statues and omits many of the

common law claims pled in this action.  Given these material differences in the claims

asserted in the respective cases, the Court finds that the two actions are not parallel.

Moreover, even if the Court were to assume that the actions were parallel, it

would not be compelled to decline jurisdiction over this case.  The Supreme Court has

identified several non-exclusive factors to consider in evaluating whether to decline

jurisdiction, including: (1) whether the state or federal court has assumed jurisdiction

over property in dispute; (2) the inconvenience to the parties of the federal forum; (3)

avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5)

the vexatious nature of the litigation; (6) whether federal law provides the rule of

decision; and (7) and the adequacy of the state court proceeding to protect the federal

plaintiff's rights.  *See Colorado River*, 424 U.S. at 818; *Moses H. Cone*, 460 U.S. at 18-

_____

courts).

[2]  To the extent Able attempted to raise a choice of law question with respect to the entire case in its supplemental briefing, the Court finds that such efforts were procedurally improper.  The Court granted the parties the opportunity to file supplemental briefing on the choice of law issue only to the extent that it was raised in the original Motions to Dismiss. Able's Motion to Dismiss only raised choice of law with respect to SBM's inevitable disclosure claim.  (ECF No. 217 at 13.)  Because, as discussed in section D below, Plaintiff concedes that its inevitable disclosure claim is now moot, the Court has no reason to make a finding regarding choice of law in ruling on the instant Motions.  As a consequence, the Court GRANTS SBM's Motion (ECF No. 559) to Strike Able's Supplemental Brief (ECF No. 556) Regarding the Applicability of California Law or, in the Alternative, to Treat Able's Supplemental Brief as a Motion for Partial Summary Judgment and Set Appropriate Briefing Schedule.

28.  These factors are not a "mechanical checklist"; rather, the Court should "careful[ly] balanc[e] . . . the most important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  *Fox v. Maulding*, 16 F.3d 1079, 1082 (1994).

Probably the most significant factor in this case is the order in which the respective courts obtained jurisdiction.  Able contends that this factor weighs in favor of declining to exercise jurisdiction because it was involved in the California Action before it became a party to this case.  (ECF No. 217 at 12.)  The Court acknowledges that Able was not named as a party in this action until nine days after the California case commenced; however, at the time Able was added as a Defendant, this action had already been pending for nine months.  Therefore, this Court already had jurisdiction over SBM and Garrett and the majority of the claims at issue in the two cases nine months before the matter was before the California court.

Additionally, the Supreme Court has held that this factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  *Moses H. Cone*, 460 U.S. at 21.  In a motion filed in the California Action asking the California court to stay that proceeding, Able stated that "[t]he Colorado action has progressed far more rapidly than the California state court action" and admitted that the litigation posture of this action was far more advanced than the California Action.   (ECF No. 558-3 at 7-8.)  Indeed, the docket for this case is rapidly approaching six hundred entries.  Magistrate Judge Boyd N. Boland has spent an extraordinary amount of time working with the parties to resolve evidentiary and discovery-related disputes.  He has held a multitude of hearings,

including a two-day hearing on Plaintiff's Motion for Preliminary Injunction.  (ECF Nos. 328 & 329.)  Magistrate Judge Boland has made a number of factual findings, including the following: (1) certain SBM documents constitute trade secrets; (2) Garrett used improper means to acquire SBM's trade secrets; (3) Able acquired SBM's trade secrets from Garrett; and (4) these trade secrets were obtained in violation of Garrett's Confidentiality Agreement.  (ECF No. 364 at 17-18.)  Magistrate Judge Boland has entered an injunction barring Garrett and Able from possessing SBM trade secret information and ordering them to return any trade secret information in their possession.  (*Id.*)

From what the Court can discern, the California Action appears to have only recently entered the discovery phase.  Neither party has cited any substantive rulings made by the California court.  Thus, even though the California court had jurisdiction over Able nine days before this Court, the fact that this case is far more advanced than the California Action weighs heavily in favor of this Court exercising jurisdiction over the above-captioned action.

Able also contends that the Court should decline jurisdiction because SBM engaged in forum shopping in choosing to file this action in Colorado.  Able alleges that it was not originally named as a party because SBM wanted to "skirt[] the issue of jurisdiction."  (ECF No. 321 at 11.)  However, jurisdiction in this case is not predicated on diversity; SBM brings a federal claim against Defendants.  Because Garrett lives in Colorado, SBM could have brought this action here regardless of whether Able was named as a party from the outset.  *See* 28 U.S.C. §1391(b).  The Court sees nothing vexatious about SBM choosing to file this action against Garrett in Colorado and then

later adding Able as a party after it learned, through discovery, of the timing of events with respect to when Garrett began his employment with Able.

In fact, if either of these actions are vexatious, it appears more likely that the California Action would qualify as forum shopping. Able contends that, because it was not originally named in this action, it "had no choice other than to file the state court action to force SBM to disclose what trade secrets it claimed were stolen by Able." (ECF No. 321 at 11.) But Able could have sought to intervene or otherwise joined in this action. Also, in a hearing in the California Action, Able admitted that part of its motivation in bringing its claims against SBM in California state court was that Colorado's laws are not "quite as protective" as those in California. (ECF No. 556-2[3] at 6.) Thus, the Court finds that the vexatious nature of Able's litigation tactics weighs in favor of it exercising and retaining jurisdiction over this case.

Able also contends that the California court is more convenient. (ECF No. 217 at 12.) Because SBM and Able are based in California, the California court is likely somewhat more convenient. But the principal actor in this case—Garrett—lives in Colorado and many of Garrett's allegedly wrongful acts occurred in Colorado. Able has hired counsel in Colorado and admitted in a filing in the California Action that "Colorado is a suitable place for trial." (ECF No. 558-3 at 8.) Thus, the convenience advantage of the California court does not carry significant weight in this analysis.

In sum, the Court has carefully balanced the factors set forth in *Colorado River*

---

[3] Although the Court has stricken Able's Supplemental Brief Regarding Applicability of California Law, it takes judicial notice of the transcript from the California Action attached thereto. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (federal courts may take notice of related proceedings in other courts).

and *Moses H. Cone* and finds that this is not an "exceptional" case that warrants declining to exercise jurisdiction.  Accordingly, Able's Motion to Dismiss is denied to the extent it asks the Court to dismiss this action under the *Colorado River* doctrine.

**D.     Inevitable Disclosure Claim**

The fourth claim for relief in Plaintiff's Amended Complaint seeks an injunction to prevent Garrett from working for Able under the "inevitable disclosure" doctrine.  (ECF No. 190 ¶¶ 70-80.)  Able moves to dismiss this claim and argues that California law does not recognize such a claim.  (ECF No. 217 at 13.)  In its recently-filed supplemental briefing, SBM states: "SBM's inevitable disclosure claim has been rendered moot as to Able by the termination of Garrett's employment with Able.  Simply put, the Court cannot enjoin Garrett from working for Able if he no longer works for Able."  (ECF No. 558 at 4.)

The Court construes SBM's statements in its recent filing as a withdrawal or voluntary dismissal of its inevitable disclosure claim.  Accordingly, Able's Motion to Dismiss is denied as moot with respect to Plaintiff's inevitable disclosure claim as such claim has been withdrawn.

**E.     Misappropriation of Trade Secrets**

Plaintiff's fifth claim for relief alleges that Able and Garrett misappropriated trade secrets in violation of Colo. Rev. Stat. § 7-74-101 *et seq*.  (Am. Compl. ¶¶ 81-89.)  Able moves to dismiss this claim and argues that SBM has not alleged with sufficient particularity which trade secrets it supposedly misappropriated.  (ECF No. 217 at 14-15.)

Federal Rule of Civil Procedure 8(a)(2) requires only that a pleading include a "short, plain statement of the claim showing that the pleader is entitled to relief." Although some types of claims are subject to a heightened pleading standard that requires greater particularity, *see* Fed. R. Civ. P. 9, misappropriation of trade secrets is not such a claim. *See DSMC, Inc. v. Convera Corp.*, 273 F.Supp.2d 14, 24 (D.D.C. 2002) (holding that the usual notice pleading requirements of Rule 8 apply to a trade secrets claim).

The cases rejecting trade secret claims for lack of specificity are predominantly at later stages in the litigation process. *See, e.g., Lear Siegler, Inc. v. Glass Plastics Corp.*, 1987 WL 15749 (N.D. Ill. Aug.12, 1987) (granting summary judgment to defendant); *Composite Marine Propellers, Inc. V. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) (overturning jury verdict). Even the cases cited by Able in support of its argument are further along in the litigation than the motion to dismiss stage. *E.g., Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. 2008) (holding that a party must disclose which trade secrets were allegedly misappropriated during the discovery process). Courts have only dismissed a claim for lack of specificity on the pleadings in the most extreme cases. *See, e.g., Thermal Zone Products Corp. v. Echo Eng., Ltd.*, 1993 WL 358148 at *5–6 (N.D. Ill. Sept.14, 1993) (dismissing complaint that merely recited statutory language).

Paragraphs 45 and 46 of Plaintiff's Amended Complaint set forth specific documents and subjects of information that were allegedly misappropriated by Able and Garrett, including: "SBM's strategic plan which identifies SBM's strategy for doubling its

facilities services business over a five-year period; . . . SBM's historical bid information; sales power-points designed by SBM for particular customers."  (Am. Compl. ¶ 45.) The Court finds that these allegations contain sufficient detail to satisfy Rule 8's notice pleading requirement.  Accordingly, Able's Motion to Dismiss is denied with respect to Plaintiff's misappropriation of trade secrets claim.

F.    **Civil Theft**

Plaintiff's sixth claim for relief alleges that Able and Garrett are liable for civil theft for having violated Colo. Rev. Stat. § 18-4-401 *et seq*.  (Am. Compl. ¶¶ 90-94.)  Able moves to dismiss this claim and argues that it is preempted by Colorado's Uniform Trade Secrets Act ("CUTSA"), Colo. Rev. Stat. § 7-74-108.  (ECF No. 217 at 16.)

This Court has rejected the contention that CUTSA was intended as a "blanket preemption to all claims that arise from a set of circumstances that happen to involve information that the plaintiff claims is in the nature of a trade secret."  *Powell Prods., Inc. v. Marks*, 948 f.Supp. 1469, 1475 (D. Colo. 1996).  Instead, the Court has adopted a tailored approach in which only claims "restating the same operative facts as would plainly and exclusively spell out only trade secret misappropriation" are preempted.  *Id.* at 1474.  Thus, "the salient question in addressing the question of trade secrets act preemption is whether a challenged common law claim depends solely on a finding of trade secret status to be actionable.  Where it does not, the claim is not preempted."  *Virtual Cloud Servs., Inc. v. CH2M Hill, Inc.*, 2006 WL 446077, *2 (D. Colo. Feb. 21, 2006).

SBM contends that its civil theft claim is not preempted because it alleges that

Able and Garrett misappropriated more than just trade secrets.  (ECF No. 293 at 16.)

In fact, Plaintiff's Amended Complaint alleges that Garrett has never returned "an

external hard drive, the disk from Kieft, and copies of SBM's hard drive files."  (Am.

Compl. ¶ 40.)  This Court has held: "That portion of the conversion claim seeking

recovery for stolen physical items such as blueprints and drawings would not be

preempted because it would not be the subject of a misappropriation claim under the

[C]UTSA."  *Virtual Cloud*, 2006 WL 446077, at *2.  Because Plaintiff's Amended

Complaint alleges that, in addition to trade secrets, Able and Garrett stole actual

physical items, the Court finds that its CUTSA claim is not preempted.

Accordingly, Able's Motion to Dismiss is also denied to the extent it seeks

dismissal of Plaintiff's civil theft claim.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS the follow:

1.    Defendant Garrett's Partial Motion to Dismiss (ECF No. 196) is DENIED;

2.    Defendant Able's Motion to Dismiss (ECF No. 217) is DENIED;

3.    Plaintiff has voluntarily withdrawn its Fourth Claim for Relief seeking an

       injunction under the Inevitable Discovery Doctrine and such claim is no longer

       pending in this action. Plaintiff's Fourth Claim for Relief is thus DISMISSED

       WITHOUT PREJUDICE; and

4.    Plaintiff's Motion to Strike Able's Supplemental Brief Regarding the Applicability

       of California Law or, in the Alternative, to Treat Able's Supplemental Brief as a Motion

       for Partial Summary Judgment and Set Appropriate Briefing Schedule (ECF No. 559)

is GRANTED; Defendant Able's Supplemental Brief Regarding Applicability of California Law, ECF No. 556 is STRICKEN.

Dated this 27th day of February, 2012.

BY THE COURT:

William J. Martínez
United States District Judge